UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BENJAMIN BROWN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 19-2795 (RBW) |
| FEDERAL BUREAU OF PRISONS, | ) ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM OPINION

The plaintiff, Benjamin Brown, proceeding pro se, brings this civil action against the defendant, the Federal Bureau of Prisons (the "Bureau"), alleging violations of the First Amendment and the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. See First Amended Complaint ("Am. Compl.") ¶¶ 1, 4–6. Currently pending before the Court are the Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (the "Bureau's motion" or "Def.'s Mot."), ECF No. 27, and the Plaintiff's Motion for Leave to File Supplemental Complaint (the "plaintiff's motion" or "Pl.'s Mot."), ECF No. 41. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant in part and deny without prejudice in part the Bureau's motion and grant the plaintiff's motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment ("Def.'s Mem."), ECF No. 27-1; (2) the defendant's Statement of Material Facts ("Def.'s Facts"), ECF No. 27-2; (3) the Declaration of C. Treadway ("Treadway Decl."), ECF No. 27-5; (4) the Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment ("Pl.'s Opp'n"), ECF No. 42; and (5) the Defendant's Reply in Support of its Motion to Dismiss, or in the Alternative, for Summary Judgment ("Def.'s Reply"), ECF No. 43.

## I. BACKGROUND

### A. Factual Background

On August 1, 2018, following a jury trial, the plaintiff's uncle, Martin Gottesfeld, was convicted of conspiracy to intentionally damage protected computers, in violation of 18 U.S.C. § 371, and the intentional damage of protected computers, in violation of 18 U.S.C. § 1030(a)(5)(A). See generally United States v. Gottesfeld, No. 16 Cr. 10305 (D. Mass. Aug. 1, 2018). In that case, it was alleged that Gottesfeld launched cyber-attacks on the computer networks of the Wayside Youth and Family Support Network and the Boston Children's Hospital, with the objective of punishing these two institutions for the alleged mistreatment of children and adolescents at their facilities. See Indictment ¶¶ 17–18, United States v. Gottesfeld, No. 16 Cr. 10305 (D. Mass. Oct. 19, 2016), ECF. No. 28. Gottesfeld's cyber-attack on the Boston Children's Hospital forced the hospital into a partial shutdown that cost more than $300,000. Id. ¶¶ 18, 26–29. On January 11, 2019, Gottesfeld was sentenced to a 121-month term of imprisonment for his actions. See Order at 2, United States v. Gottesfeld, No. 16 Cr. 10305 (D. Mass. Jan. 11, 2019), ECF No. 389.

During his incarceration, on April 1, 2019, Gottesfeld was moved to the Bureau's "Communications Management Unit" ("CMU"), located within the Federal Correctional Complex in Terre Haute, Indiana. See Am. Compl. ¶ 22. The CMU is "a general population housing unit where inmates ordinarily reside, eat, and participate in all . . . programming." 28 C.F.R. § 540.200. The purpose of the CMU is "to provide an inmate housing unit environment that enables staff to more effectively monitor communication between inmates in CMUs and persons in the community," which may be "necessary to ensure the safety, security, and orderly operation of correctional facilities and protection of the public." Id. Inmates housed within

CMUs maintain access to their family members through limited written and telephone correspondence, and social visits, subject to the Warden's discretion.  Id. §§ 540.203–205.

According to the plaintiff, Gottesfeld was moved into the CMU in retaliation for criticizing the Bureau to the media and for engaging in civil litigation against the Bureau. See Am. Compl. ¶¶ 30, 34, 44.  The plaintiff alleges that, after extensive prior communication with Gottesfeld during his incarceration, all communications from Gottesfeld ceased on April 27, 2019, with no explanation.  Id. ¶ 55.  Additionally, the plaintiff alleges that Gottesfeld has been punished with loss of good time and a period of solitary confinement in retaliation for his history of criticism of and litigation against the Bureau and that he is currently being intimidated to deter him from responding to further communications from the plaintiff.  Id. ¶¶ 59, 70–71.

**B.     The Plaintiff's FOIA Requests**

On March 12, 2019, the plaintiff submitted a FOIA request to the Bureau, see id. ¶ 84, seeking:

- Any and all records showing where [ ] Gottesfeld was held in custody, detained, or imprisoned during the time period February 17, 2016[,] to [March 12, 2019].[]
- Any and all administrative detention orders issued in reference to [ ] Gottesfeld.
- Any and all records related to the determination . . . to place [ ] Gottesfeld in Special Housing Unit [ ] status during February[] 2019[,] and March[] 2019. . . .
- Any and all "Inmate Requests to Staff Member[s]" submitted by [ ] Gottesfeld while in the custody of the [ ] Bureau[.]
- Any and all records showing the disposition, outcome or resolution of said "Inmate Requests to Staff Member[s]."
- Any and all complaints or grievances submitted by [ ] Gottesfeld to officials or staff members of the [ ] Bureau . . . , including but not limited to any "Informal Resolution Forms" submitted by [ ] Gottesfeld and any "Requests for Administrative Remedy" submitted by him.
- Any and all records showing the disposition, outcome[,] or resolution of said complaints or grievances[,]

3

id., Exhibit ("Ex.") 1 (Request for Records Pursuant to FOIA re: Inmate Martin Gottesfeld). According to the plaintiff, the Bureau acknowledged receiving his request on April 9, 2019, but "[w]hen this lawsuit was originally commenced on September 18, 2019, [the Bureau] had still not responded to the request in substance." Id. ¶ 85–86. However, "[o]n November 25, 2019, during the pendency of this litigation, [the Bureau] released records in response to the request." Id. ¶ 87

In the Supplemental Complaint the plaintiff seeks to file, he additionally alleges that, on July 30, 2019, he submitted an additional request to the Bureau seeking:

- Any and all records showing whether [ ]Gottesfeld's ability to send letters to members of the community has been restricted or is currently being restricted by the Bureau . . . or [ ] any other person or entity.
- Any and all records showing whether [ ] Gottesfeld's ability to receive letters from members of the community has been restricted or is currently being restricted by the Bureau . . . or [ ] any other person or entity.
- Any and all records showing whether [ ] Gottesfeld's sent or received mail has been or is currently being delayed.
- Any and all policies that apply to the handling of mail sent or received by inmates in the [CMU] at Federal Corrections Institution, Terre Haute.[]
- Any and all records showing whether [ ] Gottesfeld's ability to make telephone calls to members of the community has been restricted or is currently being restricted by the Bureau . . . or by any other person or entity.

Pl.'s Mot., Ex. 1 (Supplemental Complaint) at 7. According to the Bureau, after being resubmitted on September 6, 2019, due to an initially defective Certificate of Identity Form, this request was ultimately determined to have been "accepted in error, as the authorization to release inmate Gottesfeld's records was not dated within three [ ] months of the request, as required by federal regulation and [Bureau] policy." Treadway Decl. ¶ 17. However, the plaintiff's putative Supplemental Complaint claims that he subsequently resubmitted that request on March 3, 2020, after Gottesfeld, on December 20, 2019, "executed an updated authorization reauthorizing [the p]laintiff to request records concerning Gottesfeld." Pl.'s Mot., Ex. 1 (Supplemental Complaint)

4

¶¶ 4–5. The plaintiff further represents that the Bureau "has neither granted nor denied" this resubmitted request. Id., Ex. 1 (Supplemental Complaint) ¶¶ 11–14.

**C.     Procedural Background**

On September 18, 2019, the plaintiff initiated this lawsuit, asserting First Amendment and FOIA claims against the Bureau. See generally Complaint, ECF No. 1. On November 4, 2019, Gottesfeld filed a motion "for leave to intervene in the instant case pursuant to Fed[eral] R[ule of] Civ[il] P[rocedure] 24(a)(2)." Motion to Intervene at 1, ECF No. 6. On December 4, 2019, the Bureau filed its initial motion to dismiss, see Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgement, ECF No. 7. However, on February 18, 2020, the plaintiff filed a motion for leave to amend his Complaint, see Plaintiff's Motion for Leave to File Amended Complaint, which the Court granted, see Minute Order (Apr. 13, 2020). The plaintiff's Amended Complaint seeks (1) a declaration that he has a First Amendment right to communicate with Gottesfeld and that this right is being denied when the Bureau arbitrarily suppresses Gottesfeld's communications; (2) an order enjoining the Bureau from carrying out further acts of intimidation aimed at suppressing Gottesfeld's communications; and (3) an order requiring the Bureau to provide the plaintiff copies of all records he requested in his third FOIA request, specifically records related to any complaints or grievances Gottesfeld submitted during his time at the Bureau to the subsequent dispositions of these complaints or grievances. See Am. Compl. at 25–26.

On May 22, 2020, the Bureau filed the motion to dismiss that is the subject of this Memorandum Opinion. See Def.'s Mot. Thereafter, on May 28, 2020, the Court issued an order indicating that, in light of the pendency of Gottesfeld's motion to intervene, "all deadlines regarding oppositions and replies to the" Bureau's motion were vacated "pending further order

of the Court." Order at 2 (May 28, 2020), ECF No. 28. Once briefing on the motion to intervene was complete, the Court scheduled a motion hearing for March 17, 2021, and denied the Bureau's motion without prejudice subject to full reinstatement following a decision on the motion to intervene. See Order at 1 (Feb. 19, 2021), ECF No. 39. After hearing oral argument from the parties at the March 17, 2021 hearing, the Court denied Gottesfeld's motion to intervene, reinstated the Bureau's motion, and issued a schedule for final briefing on the Bureau's motion. See Order at 1 (Mar. 17, 2021), ECF No. 40.

On April 15, 2021, the plaintiff filed his motion for leave to file a supplemental complaint. See Pl.'s Mot. Through his putative Supplemental Complaint, the plaintiff seeks to plead that the Bureau has constructively denied his "second [FOIA] . . . request." Pl.'s Mot. at 1. Thereafter, on April 23, 2021, the plaintiff filed his opposition to the Bureau's motion, see Pl.'s Opp'n, and, on May 28, 2021, the Bureau filed its reply in support of its motion, see Def.'s Reply.

## II.     STANDARDS OF REVIEW[2]

### A.     Federal Rule of Civil Procedure 12(b)(6)—Motion to Dismiss

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

---

[2] Because the Court ultimately concludes that considering the defendant's summary judgment would be premature at this time, the Court will not recite the standard under Federal Rule of Civil Procedure 56.

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth."  Iqbal, 556 U.S. at 679.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citing Twombly, 550 U.S. at 555).  Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]"  Hettinga, 677 F.3d at 476.  Moreover, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice."  Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**B.      Federal Rule of Civil Procedure 15(d)—Motion for Leave to File a Supplemental Pleading**

Under Rule 15(d), "the [C]ourt may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  Rule 15(d) aims "to make pleadings a means to achieve an orderly and fair administration of justice."  Gomez v. Wilson, 477 F.2d 411, 417 n.34 (D.C. Cir. 1973) (quoting Griffin v. Cty. Sch. Bd., 377 U.S. 218, 227 (1964)).  Therefore, although the decision to grant a motion for leave to file a supplemental pleading is "within the discretion of the [ ] [C]ourt," Xingru Lin v. District of Columbia, 319 F.R.D. 1, 1 (D.D.C. 2016) (quoting Wildearth Guardians v. Kempthorne, 592 F. Supp. 2d 18, 23 (D.D.C. 2008)), such motions should be "freely granted when doing so will promote the economic and

7

speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action[,]" Hall v. Cent. Intel. Agency, 437 F.3d 94, 101 (D.C. Cir. 2006) (citation omitted).

**C.    Pro Se Plaintiff**

In applying the above legal framework, the Court is mindful of the fact that the plaintiff is proceeding in this matter pro se. This appreciation is required because the pleadings of pro se parties are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Furthermore, all factual allegations by a pro se litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a dispositive motion. See Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999). Nonetheless, a "pro se complaint, like any other, must present a claim upon which relief can be granted by the [C]ourt[,]" Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981), and, when faced with a dispositive motion, a pro se litigant "must comply with the Federal Rules of Civil Procedure and this Court's local rules[.]" Hedrick v. Fed. Bureau of Investigation, 216 F. Supp. 3d 84, 93 (D.D.C. 2016) (citations omitted); see McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

### III.    ANALYSIS

Because the Bureau's motion raises separate arguments regarding the plaintiff's constitutional and FOIA claims, see Def.'s Mem. at 4, 9, and because the plaintiff's putative supplemental pleading only seeks to supplement the FOIA violations he asserts, see Pl.'s Mot.,

Exhibit ("Ex.") 1 (Supplemental Complaint), the Court will first address the Bureau's arguments for dismissal of the plaintiff's constitutional claim before turning to the plaintiff's motion for leave to file his supplemental complaint and the Bureau's FOIA-related arguments.

### A.     The Plaintiff's Constitutional Claim

The Bureau argues that the plaintiff's First Amendment claim should be dismissed for several reasons. First, the Bureau contends that the doctrine of sovereign immunity bars any claim for which the plaintiff seeks monetary damages. See Def.'s Mem. at 5. Second, the Bureau argues that "[t]he plaintiff's constitutional challenge is subject to [Gottesfeld]'s conditions of confinement[,]" and the plaintiff's constitutional claim, in that regard, is speculative. Id. at 5–6 (capitalization omitted). To that point, the Bureau further argues that the plaintiff generally "fails to state a claim for relief[,]" because of the validity of the CMU regulations  Id. at 7–8. The Court will address each of these arguments in turn.

### 1.     Sovereign Immunity

The Bureau notes that, "[u]nder the doctrine of sovereign immunity, the United States is immune to suit unless Congress has expressly waived the defense of sovereign immunity by statute." Def.'s Mem. at 4–5 (citing United States v. Mitchell, 463 U.S. 206, 212 (1983)). According to the Bureau, "[i]nsofar as [the p]laintiff seeks monetary damages from the [Bureau] for [ ] alleged constitutional violation[s], there has been no waiver of sovereign immunity for such a claim." Id. at 5. In response, the plaintiff states that, "[w]hen he amended his complaint on April 13, 2020, [he] ceased pursuing money damages from [the Bureau] in this action, claiming only declaratory and injunctive relief." Pl.'s Opp'n at 3.

The plaintiff is correct. In his original Complaint, the plaintiff explicitly sought an "[a]ward [of] damages for his loss of communication with Gottesfeld for the period April 27, 2019[,] continuing through the present." Compl. at 14. However, the plaintiff's Amended

9

Complaint omits this prayer for relief. See Am. Compl. at 25–27. The plaintiff does still seek, however, a FOIA fee-shifting attorney's fees award "[i]n the event [that he] becomes represented by counsel during the pendency of this action or the pendency of an appeal connected to this action[,]" id. at 26, and asks that he be awarded "the costs and expenses of this action[,]" id. at 27. Nevertheless, to the extent the plaintiff's original Complaint sought "monetary damages from the [Bureau] for the alleged constitutional violation[,]" Def.'s Mem. at 5, the Court agrees with the plaintiff that his Amended Complaint abandons this claim. Indeed, the Bureau does not appear to dispute this point. See Def.'s Reply. Accordingly, the Court need not address the Bureau's sovereign immunity argument regarding any claim for monetary damages.

### 2. Sufficiency Challenge

Next, the Bureau argues that the "[p]laintiff's constitutional claim is entirely speculative," Def.'s Mem. at 6, and that "Gottesfeld's designation at a CMU affords [the Bureau] the ability to monitor [his] communication[s] as necessary to ensure the safety, security, and orderly operation of correctional facilities and protection of the public[,]" id. at 7. In response, the plaintiff insists that his allegations "give rise to a reasonable inference that the true reason for placing Gottesfeld in the CMU was [ ] retaliate[ion]" in response to Gottesfeld's outspokenness and Gottesfeld's "open[ ] critici[sm of] conditions in [ ] Bureau . . . facilities in the press and in pro se lawsuits[.]" Pl.'s Opp'n at 4–5.

While the plaintiff's allegations focus almost exclusively on purported actions against Gottesfeld, as opposed to the plaintiff, the Supreme Court has recognized that a nonprisoner correspondent may challenge unreasonable interference with an inmate's correspondence. As the Court explained in Procunier v. Martinez, 416 U.S. 396 (1974),

> [c]ommunication by letter is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result, and

> censorship of the communication between them necessarily impinges on the interest of each.  Whatever the status of a prisoner's claim to uncensored correspondence with an outsider, it is plain that the latter's interest is grounded in the First Amendment's guarantee of freedom of speech.  And this does not depend on whether the nonprisoner correspondent is the author or intended recipient of a particular letter, for the addressee as well as the sender of direct personal correspondence derives from the First and Fourteenth Amendments a protection against unjustified governmental interference with the intended communication.

Id. at 408–09 (1974) (emphasis added), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989).  Additionally, "censorship of prisoner mail, whether incoming or outgoing, impinges on the interest in communication of both the inmate and the nonprisoner correspondent." Saxbe v. Wash. Post Co., 417 U.S. 843, 865 (1974).  Indeed, prison restrictions "do [not] bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside.'" Turner v. Safley, 482 U.S. 78, 94–99 (1987).  Therefore, restrictions on prisoner-to-nonprisoner correspondence must be "'reasonably related to legitimate penological interests.'" Thornburgh, 490 U.S. at 404 (quoting Turner, 482 U.S. at 89).

     Here, even assuming that the plaintiff will be successful in presenting nonspeculative, nonconclusory allegations establishing the placement of restrictions on his correspondence with Gottesfeld, the plaintiff has failed to allege facts demonstrating that such restrictions were not "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.  Instead, the Court agrees with the Bureau that restrictions on prisoner communications imposed by the CMU have readily been recognized as valid and reasonable.  See Def.'s Mem. at 8 (noting that "[t]he restrictions placed on CMU inmates have been reviewed by a federal court and these restrictions were found not to violate prisoners' alleged First Amendment right to family integrity[]").  "Indeed, the weight of the relevant case law supports the conclusion that the types of communications restrictions imposed by the CMUs are rationally related to the legitimate penological interest of promoting the safety of correctional institutions and the public.  Aref v.

11

Holder, 774 F. Supp. 2d 147, 163 (D.D.C. 2011). Furthermore, the plaintiffs' insinuation that Gottesfeld does not belong in the CMU because his "communications with the outside world do not pose any heightened or particular risk compared with the average Federal prisoner[,]" Am. Compl. ¶ 32 (emphasis removed), are belied by the plaintiff's acknowledgment that "only a tiny fraction of [f]ederal inmates are chosen for CMU placement, having been judged to be of particular risk[,]" id. ¶ 31.

Having failed to adequately plead the First Amendment claim that the Supreme Court has recognized for a nonprisoner correspondent, the plaintiff, instead, relies on allegations regarding the Bureau's purported retaliation against Gottesfeld. For example, the plaintiff alleges that a consistent pattern of communication with Gottesfeld, see Am. Compl. ¶ 53, was suddenly halted shortly after Gottesfeld was placed in the CMU, see id. ¶ 22. Referencing submissions made by Gottesfeld during the pendency of the resolution of Gottesfeld's motion to intervene in this case, the plaintiff also asserts that the Bureau obstructed Gottesfeld's communications through, inter alia, Gottesfeld's solitary confinement, see id. ¶¶ 73–74; deprivation of Gottesfeld's ability to purchase postage stamps, see id. ¶ 75–76; and Gottesfeld's "loss of good time[,]" id. ¶ 70. The plaintiff also alleges that Gottesfeld "is very outspoken on public matters, much more so than most other inmates[,]" and that "[Gottesfeld] openly criticizes conditions in [ ] Bureau . . . facilities in the press and pro se lawsuits[.]" Pl.'s Opp'n at 5 (citing Am. Compl. ¶¶ 36, 39, 43–44). The plaintiff also alleges that at least one incident of punishment occurred "closely in time after Gottesfeld sought litigation sanctions against the Bureau[.]" Am. Compl. ¶ 76 (alleging that Gottesfeld "served a motion for sanctions . . . on November 25, 2019[,]" and "was suddenly placed in solitary confinement on December 9, 2019").

While, these assertions seemingly attempt to state a possible claim of First Amendment retaliation on behalf of Gottesfeld,[3] they do not demonstrate that any resulting restrictions were unrelated to legitimate penological interests. Accordingly, because the plaintiff has failed to adequately allege that any restrictions affecting the correspondence between him and Gottesfeld are not reasonably related to the Bureau's legitimate interests in promoting the safety of correctional institutions and the public, the Court concludes that it must grant the Bureau's motion as to the plaintiff's constitutional claim, and that claim is therefore dismissed.

**B.     The Plaintiff's Motion for Leave to Supplement His FOIA Claims**

Having considered the defendant's arguments for dismissal, the Court now turns to the parties' arguments regarding the plaintiff's FOIA claims, starting with the plaintiff's motion under Rule 15(d) for leave to file a supplemental complaint, including additional allegations relating to "the constructive denial of a second . . . [FOIA] request." Pl.'s Mot. at 1. Specifically, the plaintiff's proposed supplemental complaint, claiming that the Bureau has yet to adjudicate his March 3, 2020 resubmitted FOIA request. See Pl.'s Mot., Ex. 1 (Supplemental Complaint). The plaintiff argues that his proposed supplemental complaint contains allegations that are "sufficiently related to the existing claims in this action because it is [a] part of [the

---

[3] To establish a First Amendment retaliation claim, a plaintiff must sufficiently allege that "(1) he [or she] engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in [the] plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against him [or her]." Aref v. Lynch, 833 F.3d 242, 258 (D.C. Cir. 2016) (citation and internal quotations omitted). Here, the plaintiff makes no argument and cites no authority for the proposition that he may stand in Gottesfeld's shoes for the purpose of presenting such a First Amendment claim, and the Court cannot independently identify any such authority. Considering both the Supreme Court's specific recognition of shared First Amendment interests between prisoners and nonprisoner correspondents only in the context of general restrictions—as well as Gottesfeld's capacity to litigate his own claims, as demonstrated by the plaintiff's allegations, see, e.g., Am. Compl. ¶¶ 38–42, and Gottesfeld's attempted intervention in this case—the Court will not entertain any implication that Gottesfeld is not "the most effective advocate" for any potential retaliation claims. Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 80 (1978).

13

Bureau]'s pattern of grossly exceeding the twenty-business-day timeline provided for by the statute for processing FOIA requests[.]" Pl.'s Mot. at 3–4.

Although the plaintiff represents that the Bureau opposes his motion for leave to file a supplemental complaint, id. at 1, the Bureau never filed an opposition to the motion. Furthermore, the Bureau's reply in support of its motion to dismiss—filed subsequent to the plaintiff's motion—does not address the plaintiff's request for leave to supplement his FOIA claim. See generally Def.'s Reply. In any event, whether to grant the plaintiff's motion is "within the discretion of the[ C]ourt," Xingru Lin, 319 F.R.D. at 1 (citing Wildearth Guardians, 592 F. Supp. 2d at 23), and the Court is mindful that such motions should be "freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action[,]" Hall, 437 F.3d at 101.

Given that the Bureau has advanced no arguments in opposition to the plaintiff's request to supplement his Amended Complaint and because the Bureau's declaration does not address the substance of the FOIA request underlying the proposed supplemental allegations,[4] see Treadway Decl. ¶ 17, the Court concludes that it should grant the plaintiff's request for leave to file his supplemental FOIA pleading. Furthermore, in light of the plaintiff's supplemental FOIA claim, the Court deems it premature to consider the Bureau's arguments regarding the totality of the plaintiff's FOIA claims until the record is complete. Thus, the Court agrees with the plaintiff that it would be "in the interest of judicial economy," Pl.'s Mot. at 3, to deny without prejudice

---

[4] The Bureau's declaration notes that the plaintiff was "free to resubmit his [supplemental] request to [the Bureau,]" but that "the records produced in response to [the plaintiff's other requests] . . . are likely the only records responsive[.]" Treadway Decl. ¶ 17 n.5. This statement—valid or not—is insufficient for the Court to adequately consider the sufficiency of the Bureau's FOIA efforts because it is not "relatively detailed and non-conclusory." SafeCard Servs., Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

the Bureau's motion—but only as to the plaintiff's FOIA claims.  See Am. Oversight, v. U.S. Postal Serv., Civil Action No. 20-2580 (RC), 2021 WL 4355401, at *1 (D.D.C. Sept. 23, 2021) (denying FOIA summary judgment and directing agency to "supplement its declarations to address [ ] deficiencies identified" by the Court).

## IV.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies without prejudice in part the Bureau's motion to dismiss, or in the alternative, for summary judgment, and grants the plaintiff's motion for leave to file his Supplemental Complaint.

**SO ORDERED** this 22nd day of June, 2022.[5]

REGGIE B. WALTON  
United States District Judge

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.